***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby modifies and affirms the Opinion and Award of the Deputy Commissioner.
 *********** EVIDENTIARY AND PROCEDURAL ISSUES
The Deputy Commissioner accepted into evidence petitioner's exhibits 1 through 13, and 15 through 20. Petitioner's exhibit 14, concerning lost wages, was not admitted into evidence. Petitioner testified at hearing concerning his lost wages, including testimony refreshed with review of exhibit 14. Although exhibit 14 is not admitted, the Full Commission denies respondent's motion to strike petitioner's testimony concerning his lost wages. Respondent's exhibit one (a-g) was also admitted into evidence by the deputy commissioner. The Deputy Commission took judicial notice that the Shelby newspaper on 28 August 1995 reported that the sunset for that day was expected to occur at or about 7:58 P.M. Having received no objection or other basis to contest this fact, the Full Commission finds that sunset occurred on or about 7:58 P.M. on 28 August 1995.
The issues in this case are (1) whether any negligence on the part of respondents North Carolina Department of Transportation, Crime Control and Public Safety, and/or State Highway Patrol proximately cause petitioner's personal injuries and property damage; (2) if so, to what amount of benefits is petitioner entitled to recover; and (3) whether petitioner, by his own negligence, contributed to his personal injuries and property damage.
On or about 2 November 1998 respondents filed a Motion to Dismiss with the Industrial Commission predicated on the fact that petitioner did not name the employee(s) of the State that he asserts was (were) negligent. This motion was not ruled upon by the Commission before the deputy commissioner's hearing; therefore, the Full Commission finds that respondent waived the motion by not seeking a ruling before the hearing.See N.C Rules of Civil Procedure, Rule 12(d) (defenses shall be heard and determined before trial).
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following
 FINDINGS OF FACT
1. On the date of the deputy commissioner hearing in the matter, petitioner was 25 years old and was residing in South Carolina.
2. At 8:42 p.m. on 27 August 1995, a call was placed to a 911 operator for Cleveland County, North Carolina. The caller, Esther Howell, notified the 911 operator that the bridge on Christopher Road "was out." The operator thereupon made several telephone calls, including one to the fire marshal and one to the sheriff. The operator could not recall whether she placed a call to the Department of Transportation (hereafter "DOT"), and the phone log for that evening does not reflect that DOT was contacted by the 911 operator.
3. The bridge on Christopher Road, which is technically known as State Road ("SR") 1110, runs east to west. SR 1110/Christopher Road intersects with Highway ("HW") 18, which runs north to south. The bridge on SR 1110/Christopher Road is approximately one-tenth of one mile downhill from and to the east of HW 18. Over the eastern side of the bridge, SR 1110/ Christopher Road curves sharply to the left. Both SR 1110/Christopher Road and HW 18 are maintained by the state of North Carolina.
4. Due to extremely heavy rain, on 27 August 1995 the Christopher Road bridge began collapsing on its eastern side. This was the reason for the call made to the 911 operator.
5. A Highway Patrolman, Trooper J. L. Brower, was not dispatched, but he heard on his radio about the situation at the Christopher Road bridge and went there to survey the scene. When he arrived, the trooper saw other people already there, including the fire marshal, R. L. Lovelace. The trooper did not notice any flares, nor did he himself place any flares at the scene; however, there were a great many vehicle lights on owing to the other vehicles present at the scene. The trooper eventually placed his vehicle sideways across the road on the eastern side of the bridge around the curve so as to alert and stop any incoming traffic driving in a westerly direction on SR 1110/Christopher Road.
6. Fire Marshal Lovelace had responded to the situation because his job requires him to respond to bad weather emergencies. When he arrived on the scene, he saw that one side of the bridge had noticeably dropped below the pavement on the street. The fire marshal was in his service vehicle, a red van with emergency lights on its top. During the course of his time at the scene, the fire marshal moved his vehicle several times; however, he did keep the emergency lights flashing on the top of the van and his hazard lights were on as well. While the fire marshal testified that when petitioner crossed the bridge he had positioned his vehicle in the middle of the road, this testimony is questionable because he had moved his vehicle several times during the course of the night. In any event, the fire marshal had his vehicle visibly positioned on the street on the western side of the bridge and he had on his emergency lights as well as his hazard lights.
7. At some point prior to petitioner's accident, the DOT personnel, Tony Gilbert, Robert Ledbetter, and Steve Klein, arrived on the scene. Tony Gilbert was either paged or heard about the bridge washout and he called Ledbetter and Klein to assist him. The three men, all State DOT employees, first met at the DOT maintenance shed to pick up some equipment, and they then proceeded to drive the service vehicle, a yellow truck with emergency lights on top, to the scene. They arrived at the scene at approximately 9:20 p.m., which was as quickly as they could get there given the fact that they had to first meet at the maintenance shed to load equipment onto the truck, and then drive to the Christopher Road bridge. There were other emergency personnel at the scene upon the arrival of the DOT personnel.
8. Gilbert took a flashlight and went by foot onto the bridge, where he saw that the eastern side had begun collapsing, thereby exposing at least four feet of the bank below the pavement. The DOT personnel only had enough barricades with them to close off one side of the bridge, and they placed the barricades on the eastern side of the bridge. They then left to return to the maintenance shed to get additional barricades to block off the western side of the bridge. They believed that the scene was adequately secured when they left, as there were emergency and other vehicles there, and Fire Marshal Lovelace was blocking the western side of the bridge, while Trooper Brower was blocking the eastern side. It was while the DOT personnel were at the maintenance shed that petitioner's accident occurred.
9. At approximately 10:20 p.m. on 27 August 1995, petitioner approached the Christopher Road bridge from HW 18. Petitioner was traveling in an easterly direction. It was dark and raining when he approached the bridge. Petitioner was driving a new full-sized pickup truck.
10. When petitioner approached the bridge from the western side, he saw the fire marshal's van to his left, in the opposite lane of traffic, facing towards him. Petitioner saw that the emergency lights on the van were flashing. Petitioner slowed but continued his travel towards the bridge. After he passed the van, petitioner looked in his rear view mirror and saw that the driver of the van had gotten out of his vehicle and was attempting to flag him down by waving a lighted flashlight. However, petitioner failed to stop despite this warning, and he proceeded to attempt to cross the bridge, while looking around to see if anyone was hurt or what the trouble was. Petitioner, who did not see the exposed bank on the eastern side of the bridge, then collided into the bank and sustained significant personal and property damage as a result.
11. On or about 27 August 1998, petitioner filed T-1 affidavits with the North Carolina Industrial Commission, claiming that respondents North Carolina Department of Transportation and/or State Highway Patrol negligently failed to take measures that would prevent motorists from traveling on a collapsing bridge. At some point subsequent to the filing of these T-1 forms, petitioner apparently either amended the affidavits or filed a third T-1 adding Crime Control and Public Safety as a respondent to this case.
12. From the testimony and evidence presented, respondent DOT responded to the rare occurrence of a bridge collapse as soon as practicable after being notified of the problem. Once the DOT employees arrived on the scene, they put up the barricades they had in the truck, and ascertained that additional barricades were necessary. Other emergency personnel were at the scene when the DOT employees left to return to the maintenance shed.
13. The State Highway Patrol trooper who responded to the emergency situation at the bridge acted reasonably when he surveyed the situation and then placed his vehicle, with headlights and flashing lights, across both lanes on the western side of the bridge. Petitioner did not present sufficient evidence of record to show that the Highway Patrol was otherwise negligent in failing to send additional personnel to the scene or in any other way.
14. There is insufficient evidence of record showing negligence on the part of any employee or agent of Crime Control and Public Safety.
15. Petitioner's failure to exercise reasonable care when approaching and attempting to cross the bridge, despite the warnings of Fire Marshal Lovelace, which he acknowledges he saw, constituted contributory negligence and a proximate cause of the accident. Petitioner should not have continued driving after he saw the emergency vehicle with flashing emergency and hazard lights without first stopping to see what was the matter. In addition, petitioner was looking around and in his rear view mirror as he crossed the bridge and he accordingly did not see the exposed bank on the other side of the bridge. Had he kept his eyes on the road in front of him, petitioner likely would have seen that the bridge had collapsed below the pavement on the other side of the bridge.
16. Although there is suggestion in the record that Fire Marshall Lovelace was negligent in failing to block the road with his vehicle and/or take additional steps to warn arriving traffic, there is no evidence that Fire Marshall Lovelace was an employee or agent of the State or any of its agencies.
 ***********
The foregoing stipulations and findings of fact result in the following additional
 CONCLUSIONS OF LAW
1. Petitioner has failed to establish that the negligence of the State, by and through any of its employees, was a proximate cause of the accident and his injuries.
2. Even if any negligence on the part of an agent of respondent could be considered the proximate cause of petitioner's motor vehicle accident, petitioner's own negligence in failing to heed the fire marshal's visible and adequate warning and accordingly to stop his vehicle prior to crossing the bridge contributed to his motor accident. N.C. Gen. Stat. § 143-299.1.
 ***********
The foregoing findings of fact and conclusions of law result in the following
 ORDER
1. Under the law, and for the reasons set forth above, petitioner's claim for benefits under the State Tort Claims Act must be and is HEREBY DISMISSED WITH PREJUDICE.
2. The costs of this proceeding shall be borne by the petitioner.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING IN PART AND DISSENTING IN PART:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER